references Jacobson and Hunter. Seeing as there are no questions on that combination before, I'll just move on to the other reference because I will say the arguments regarding Jacobson and Hunter as they apply to both cases are essentially identical. So moving on to COT. The issue with COT is actually relatively straightforward. I don't think there's really any factual dispute about COT. The dispute is about that ultimate legal question of obviousness. So in COT... But COT doesn't disclose acceptable holds, does he? Well, if it did, it would exactly do that. But in COT you have figure 1 and figure 8. And there's a discussion of combining figure 1 and figure 8 in the specification at paragraphs 78 through 82. And once you combine figure 8 with figure 1, you have essentially every element of claim 1 of the 170 patent. You have the cylindrical cartridges for holding the components. Where's the flexible tube go? Look at figure 1 and tell me what element in figure 1 is replaced by the flexible tube. Well, so what's happening between figure 1 and figure 8 is the cylindrical cartridge of figure 8 is being inserted into figure 1 pretty much right behind the spray gun. Which is in place of the static mixing nozzle? No, it's in addition to that. Okay, so I guess where are you going to insert it? I'm assuming the cylindrical cartridge is in figure 8 and that gun would be inserted. Would it be in place of something that's here or added to in series with? Right, no, it's adjoined directly to the spray gun. Which is, you see, the hand at 92, or I think 90 is the spray gun. So then the component in figure 8, the cylindrical cartridge, would extend off the spray gun. It's directly connected as disclosed in figure 1. The static mixing nozzle. I think of it as being, it's behind. Before it. So basically I'm going to stick the two cartridges in between, in series with. It's in series, yeah, it's directly connected. So we'd have the two cartridges, we'd have the hand gun portion, the two cartridges extending off of it, then the static mixing nozzle. What part of, is that, where's the going to be? It would go, let's see now. Because it has to be obvious to add these two things together and use the flexible hose. Well, let me just back up. No, it's not, TOT specifically discloses adding the cartridge and the handgun together. That is in paragraph 78 through 82. That's what's being discussed. The cartridges are used to provide some sort of a top-off layer where fluid from the cartridges is mixed and sent through the spray gun. Okay, but still, where is the flexible hose? Okay, so according to, so. Is it going to replace number 92? Is that what it's replacing? No, it's going to be, it's an addition. Okay, it's an addition. Right. So a flexible hose is disposed between an in-fluid communication with the cartridge and the spray nozzle. So you already have TOT disclosing the cartridge being directly connected to the spray nozzle. Now we're arguing that it's a non-obvious. That it's obvious, not obvious. Correct. Right. We're arguing that it's an obvious variation to simply insert a flexible hose between the cartridge and the spray gun. And we argue that. Is there space to do that? Well, the question is, would it be beyond the skill of a person of skill in the art to decide, I'm going to have another length of flexible hose. But if there's minimal space or no space, then what's the use of a flexible hose? Why would I need to look at that and say, I'm going to put it here? Because it would, yeah. So what's past the closing is just affixing the cylindrical cartridges directly to the spray gun. That's going to add bulk weight to the spray gun. The idea would be, it would simply be a step that would be taken in the ordinary course to say, I'm going to improve, I want to improve my flexibility. It's a spray gun after all. Flexibility, as you can imagine, is useful. A lightweight spray gun, the more lightweight, the better. So it's hardly a non-obvious step or an inventive step to simply add a length of flexible hose between the cartridge and the spray gun. I think it's lower than the level of skill in the art. You can imagine how somebody in the field actually using the spray gun might say, you know what? Let's remove this bulky cartridge and add more flexibility. Just give me another length of flexible hose. Whether or not it's after the cartridge or before. All of that sounds like we're a court of first instance. While you may be correct in saying that this isn't really all that complicated and brilliant of an invention, we do have a board decision and a standard of review, as we've discussed. Well, I think there really aren't any disputes of fact. The dispute is that ultimate legal determination of obviousness, which is a legal determination. And even if you take all of the board's factual findings, which I can't think of one we really dispute, the reference that shows what it shows, is it a non-obvious leap to simply add yet another length of flexible hose, given that a reference like this itself teaches the desirability of flexibility? But the board found that the caulking gun in figure eight is so small and light that it's not going to impair any flexibility in the spray gun. And so it kind of, I guess, based on that finding, which was on disclosure of Cott, there would be no need for, or impetus for, what a skill in the art is to stick a flexible tube in there. And that's clearly a fact finding. I mean, whether Cott does or does not disclose that is a fact finding. And the board said, look, there's no problem here. There's no need for additional flexibility because this thing is so small and light. Well, but then you're stuck with the problem that you need to find that adding a length of flexible hose to a spray gun is somehow an inventive step. No, no, I don't think we do. I think we have to say quite the opposite, right? You're the one with the burden of proof, aren't you? Sure. No, I'm not sure that I would agree that the issue of an inventive step here is required. It's whether a person with ordinary skill in the art would be motivated to have made that combination. And in my view, and what you may have to address, I mean, the ETF found that there's so little space in between, a flexible hose doesn't do anything. And therefore, a procedure would not be motivated to make that combination. Well, I don't think it can be disputed that adding flexible hose will, at the end of the day, improve the ability to move the spray gun, will provide more flexibility to the spray gun, which we argue is motivation enough in the context of a spray gun. Flexibility, portability, ease of use, all these things would motivate a person with skill in the art to add a simple length of flexible hose between those two components. Even if just to add a little bit more flexibility, it's just an advancement or it's a development that would happen in the ordinary course of its use. We can save your rebuttal time for you, if you like. I will, Your Honor. Thank you. Mr. Dickey. May it please the Court? I'd like to go right to the disclosure of COT, and I think it would be helpful to walk through the figure one and figure eight embodiments. And I would say that the factual findings of the Board are, of course, reviewed for substantial evidence, but we do dispute the characterizations of COT that are being made by PLASPAC. Figure one of COT on page 286 of the Joint Appendix illustrates, as I alluded to in the 1447 appeal, a larger scale system with two tanks, 24A, 24B, long hoses, 34B, and 34A, connected to the spray assembly with the mixer 94. What PLASPAC is attempting to do, referring to page 293 of the Joint Appendix, is combine this embodiment with a second, different component of the system, which is a handheld device used for smaller scale applications. As articulated at – pardon me? Let me ask you a point of clarification. You're looking at figure eight, and you're calling that a handheld device, but am I wrong that this isn't all that's contemplated? This is just the gun part, and you see 206, 204, which are connections. Presumably that can connect, for example, back to the cart in figure one using hoses 34B and 34A. That particular combination hasn't been asserted by PLASPAC. I believe that reference character 206 is an air hose that would be used for an atomizer assembly. The discussion, I believe, of the figure eight embodiment of COT indicates that that assembly is completely self-sustained, including having its own air apparatus. So that's a point of clarification. But the figure eight embodiment is this handheld component. So PLASPAC said that figure eight and figure one of COT should be combined. Within the bonds of KSR, having made its factual findings, the board challenged PLASPAC to present evidence consistent with KSR why there would actually be a rationale to make those combinations. Then the rationale which was presented was the alleged disclosure of flexibility in COT, which allegedly is at paragraphs 78 to 82. That flexibility, the board felt, is not a discussion of flexibility, and the scope of that is a factual finding, that would motivate one of skill and the art to make that combination. In fact, if you look closely at, I'm referring to page 297 of the joint appendix, paragraphs 41 and 42, and as the board articulated, this discussion of flexibility is in the context of the hoses connecting the spray gun to the large tanks in figure one. And it also even goes so far as to say that basically this hose should be just flexible enough. In fact, it should be kind of rigid. It has a metal braiding around it to prevent bursting. If you look at the disclosure of flexibility and interpret it, which is a factual finding, it certainly doesn't motivate one to combine figure one and figure eight where a direct connection existed and there was no need to eliminate it. A final point on COT, claims one and 15 were introduced by PLASPAC on appeal for the proposition also that COT discloses combining figure one and figure eight. Claim 15 just further corroborates that these are different components of the system. Referring to page 302 of the joint appendix, claim 15 states the system of claim one further comprising a modified dual element caulking gun containing a tube of a second resin, and that second resin is different than the first resin. This is also explained at the top of page 301 of the joint appendix at paragraph 78. So for these reasons, having articulated no reason or rational underpinning why the references should be combined and the board having found that there was no need to replace what was a direct connection and having found that these are two distinct parts of the system, we believe the board should be affirmed. And I welcome questions, but beyond that, I won't repeat myself on Jacobson and Hunter. Thank you, Mr. Dicking. No one ever loses points for surrendering time. Mr. Ryan has five plus minutes if he needs it. Just briefly, Your Honor. I want to be clear about the combination between figure eight and figure one. Figure 15 itself does show that the caulking gun and the cylindrical cartridges of figure eight are placed in fluid communication with the mixing tube. But you said figure 15 itself. Well, claim 15. I'm sorry. Okay. I'm sorry. Claim 15. Yeah. Claim 15 is just a more clear statement of what's discussed from paragraph 78 through 82. I see. So you're saying claim one is equivalent, like covering the embodiment of figure one. Exactly. Claim one shows figure one. Claim 15 is adding figure eight and the caulking gun with its second resin tube to the first embodiment. Correct. Now I follow you. And then as far as the flexible hoses, you know, I know that there is some discussion in paragraphs 41 and 42 about a certain stiffness of the hoses being valuable. You know, I don't think that's pertinent to the kind of flexibility we're talking about when you're talking about being able to move a spray gun around. The reference is just advising that the hoses have enough stiffness to withstand the axial pressure that can be applied from fluids being delivered under pressure. So those hoses still discuss and disclose to a person of skill in the art that flexibility of a hose in connection with a spray gun, which I think is common sense anyway, is desirable. Unless there are any further questions, I'll conclude. Thank you, Mr. Ryan. We'll take the case on revisement.